**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

GEORGE MOORE, individually and
on behalf of all others similarly situated,

        Plaintiff,

    v.

CHW GROUP, INC., d/b/a Choice Home
Warranty,

        Defendant.

Case No.  1:18:cv-06960

Judge:  Hon. Sharon Johnson Coleman

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFF'S COMPLAINT WITH PREJUDICE
<u>AND/OR TO STRIKE PLAINTIFF'S CLASS ALLEGATIONS</u>**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

RELEVANT ALLEGATIONS ............................................................................ 2

ARGUMENT ...................................................................................................... 4

    A.      APPLICABLE LEGAL STANDARDS ................................................. 4

          1.      Fed. R. Civ. P. 12(b)(6) – Failure to State a Claim................................. 4

          2.      Fed. R. Civ. P. 12(b)(1) – Lack of Standing ............................................. 5

          3.      Fed. R. Civ. P. 12(f) and 23 - Motions to Strike Class Allegations........... 5

    B.      THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6)............................................................................................................ 6

          1.      Plaintiff Fails to State a Claim Under the TCPA ....................................... 6

          2.      Plaintiff Fails to Plead Any Facts Supporting His ITSA Claim .............. 11

    C.      ALTERNATIVELY, PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(B)(1) BECAUSE PLAINTIFF LACKS ARTICLE III STANDING ................................................................................. 12

    D.      ALTERNATIVELY, THE COURT SHOULD STRIKE PLAINTIFF'S FAULTY CLASS ALLEGATIONS UNDER RULE 12(F) AND/OR 23 .......... 13

# TABLE OF AUTHORITIES

**Page**

## Cases

*America's Health and Resource Ctr., Ltd. v. Promologics, Inc.*,
  2018 WL 3474444 (N.D. Ill. Jul. 19, 2018)...................................................................14

*Anderson v. Logitech, Inc.*,
  2018 WL 1184729 (N.D. Ill. Mar. 7, 2018)....................................................................14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).........................................................................................................5

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007).....................................................................................................4, 5

*Bristol-Myers Squibb Co. v. Superior Court*,
  137 S. Ct. 1773 (2017)..............................................................................................13, 14

*Brooks v. Ross*,
  578 F.3d 574 (7th Cir. 2009) .....................................................................................5, 11

*Buonomo v. Optimum Outcomes, Inc.*,
  301 F.R.D. 292 (N.D. Ill. Mar. 17, 2014) .....................................................................6

*Chavez v. Church & Dwight Co.*,
  2018 WL 2238191 (N.D. Ill. May 16, 2018) ................................................................14

*Childress v. Liberty Mutual Ins. Co.*,
  2018 WL 4684209 (D.N.M. Sept. 28, 2018) ............................................................8, 10

*Cowen v. Lenny & Larry's, Inc.*,
  2017 WL 4572201 (N.D. Ill. Oct. 12, 2017)..................................................................6

*Cunningham v. Channer*,
  2018 WL 4620391 (W.D.N.Y. Sept. 26, 2018) ..............................................................9

*Cunningham v. Health Plan Intermediaries Holdings, LLC*,
  2018 WL 835222 (N.D. Ill. Feb. 13, 2018) ...................................................................8

*Cunningham v. Sunshine Consulting Grp.*,
  2018 WL 3496538 (M.D. Tenn. Jul. 20, 2018) ..............................................................9

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014).......................................................................................................13

*De Koven Drug Co. v. First Nat'l Bank*,
  27 Ill. App. 3d 798 (1st Dist. 1975) ...........................................................................1, 5

**TABLE OF AUTHORITIES**
(continued)

Page

*DeBernardis v. NBTY, Inc.*,
  2018 WL 461228 (N.D. Ill. Jan. 18, 2018) ........................................................................14

*Donaca v. Dish Network, LLC*,
  303 F.R.D. 390 (D. Colo. 2014) ........................................................................................8

*Fisher v. Alarm.com Holdings, Inc.*,
  2018 WL 5717579 (N.D. Ill. Nov. 1, 2018) ......................................................................8

*Freidman v. Massage Envy Franchising, LCC*,
  2013 WL 3026641 (S.D. Cal. June 13, 2013) ...................................................................10

*Giammanco v. Giammanco*,
  253 Ill. App. 3d 750 (2d Dist. 1993) ................................................................................12

*Goode v. PennyMac Loan Servs., LLC*,
  2014 WL 6461689 (N.D. Ill. Nov. 18, 2014) ...................................................................15

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011) ..........................................................................................................13

*Greene v. Mizuho Bank, Ltd.*,
  289 F. Supp. 3d 870 (N.D. Ill. 2017) ...............................................................................14

*Haley v. Westfreight Sys., Inc.*,
  2016 WL 5394389 (S.D. Ill. Sept. 27, 2016) ...................................................................15

*Hanley v. Green Tree Serv., LLC*,
  934 F. Supp. 2d 977 (N.D. Ill. 2013) ...............................................................................10

*Helping Hand Caregivers, Ltd. v. Darden Rest's, Inc.*,
  900 F.3d 884 (7th Cir. 2018) ..............................................................................................9

*Jackson v. Caribbean Cruise Line*,
  88 F. Supp. 3d 129 (E.D.N.Y. 2015) ...............................................................................10

*Johansen v. HomeAdvisor, Inc.*,
  218 F. Supp. 3d 577 (S.D. Ohio 2016) .............................................................................10

*Johansen v. Vivant, Inc.*,
  2012 WL 6590551 (N.D. Ill. Dec. 18, 2012) ...................................................................10

*Jones v. Royal Admin. Svcs., Inc.*,
  887 F.3d 443 (9th Cir. 2018) .........................................................................................8, 9

*Keating v. Peterson's Nelnet*,
  615 F.App'x 365 (6th Cir. 2015) ...................................................................................9, 10

iii

**TABLE OF AUTHORITIES**
(continued)

Page

*Kristensen v. Credit Payment Servs. Inc.*,
2015 WL 4477425 (D. Nev. July 20, 2015), *aff'd,* 879 F.3d 1010 (9th Cir. 2018) ..................................................................................................................9

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
134 S. Ct. 1377 (2014) ...........................................................................................12

*Linlor v. Five9, Inc.*,
2017 WL 5885671 (S.D. Cal. Nov. 29, 2017) .....................................................8, 9

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ..................................................................................................5

*McCaster v. Darden Rest., Inc.*,
845 F.3d 794 (7th Cir. 2017) ..................................................................................15

*McDonnell v. Nature's Way Products, LLC*
2017 WL 4864910 (N.D. Ill. Oct. 26, 2017) ..........................................................14

*In re Medtronics Int'l Inc.*,
223 F. Supp. 3d 514 (N.D. W.Va. 2016) .................................................................10

*Meeks v. Buffalo Wild Wings, Inc.*,
2018 WL 1524067 (N.D. Cal. Mar. 28, 2018) ......................................................8, 9

*Melito v. Am. Eagle Outfitters*,
2015 WL 7736547 (S.D.N.Y. Nov. 30, 2015) .........................................................10

*Monteferrante v. Williams-Sonoma, Inc.*,
241 F. Supp. 3d 264 (D. Mass. 2017) .......................................................................6

*Muir v. Nature's Bounty*,
2018 WL 3647115 (N.D. Ill. Aug. 1, 2018) ...........................................................14

*Mullins v. Direct Digital*,
LLC, 795 F.3d 654 (7th Cir. 2015) .........................................................................15

*Murray v. Choice Energy*,
2015 WL 4204398 (S.D. Ohio Jul. 10, 2015) .........................................................10

*Mussat v. IQVIA Inc.*,
2018 WL 5311903 (N.D. Ill. Oct. 26, 2018) ...................................................5, 6, 14

*Naiman v. Tranzvia, LLC*,
2017 WL 5992123 (N.D. Cal. Dec. 4, 2017) ............................................................8

**TABLE OF AUTHORITIES**
(continued)

Page

*Norman v. N. Illinois Gas Co.,*
  2014 WL 184774 (N.D. Ill. Jan. 16, 2014) ...........................................................11

*Panacci v. A1 Solar Power, Inc.,*
  2015 WL 3750112 (N.D. Cal. June 15, 2015) .........................................................8

*Practice Mgmt. Support Services, Inc. v. Cirque du Soleil, Inc.,*
  301 F. Supp. 3d 840 (N.D. Ill. 2018) ....................................................................14

*Reo v. Caribbean Cruise Line, Inc.,*
  2016 WL 1109042 (N.D. Ohio Mar. 18, 2016) .......................................................8

*Salmon v. CRST Expedited, Inc.,*
  2016 WL 47876 (N.D. Okla. Jan. 4, 2016) ............................................................10

*Smith v. State Farm Mut. Auto. Ins. Co.,*
  2013 WL 5346430 (N.D. Ill. Sept. 23, 2013) ..........................................................8

*Stubenfield v. Chicago Hous. Auth.,*
  6 F. Supp. 3d 779 (N.D. Ill. 2013) ...........................................................................5

*Swanson v. Citibank, N.A.,*
  614 F.3d 400 (7th Cir. 2010) ...................................................................................5

*Thomas v. Taco Bell Corp.,*
  879 F. Supp. 2d 1079 (C.D. Cal. 2012), *aff'd*, 582 F.App'x 678 (2014) .............10

*Wolfkiel v. Intersections Ins. Servs. Inc.,*
  303 F.R.D. 287 (N.D. Ill. 2014) .............................................................................11

*Zurbriggen v. Twin Hill Acquisition Co., Inc.,*
  338 F. Supp. 3d 875 (N.D. Ill. 2018) .......................................................................6

**Statutes**

815 ILCS 413/15(a) ...................................................................................................11

815 ILCS 413/15(b)(2) ..............................................................................................11

815 ILCS 413/25(d) ...................................................................................................11

47 U.S.C. § 227(b)(1)(B) .............................................................................................8

47 U.S.C. § 227(c)(5) & ............................................................................................10

**Other Authorities**

47 C.F.R. § 64.1200 ...................................................................................................10

v

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

47 C.F.R. §64.1200(3) ........................................................................................8

Fed. R. Civ. P. 12(b)(1)..........................................................................1, 5, 12, 13

Fed. R. Civ. P. 12(b)(6).................................................................................. *passim*

Fed. R. Civ. P. 12(f) ........................................................................................ *passim*

Fed. R. Civ. P. 23 ...............................................................................................6, 13

Restatement (Third) of Agency § 1.01, cmt. c.................................................8

United States Constitution, Article III ..........................................................1, 5, 12, 13

## INTRODUCTION

Plaintiff's putative class action Complaint (Dkt. 1, "Complaint" or "Compl.") alleges, in conclusory fashion and without supporting facts, that Defendant CHW Group, Inc., d/b/a Choice Home Warranty ("CHW"), violated the Telephone Consumer Protection Act ("TCPA") and the Illinois Telephone Solicitations Act ("ITSA").  Plaintiff bases these claims solely on his alleged receipt of calls on his residential phone made by someone—either CHW or an unspecified "agent"—using a "pre-recorded" voice message or that occurred after he made a "do not call" request without his consent.

As demonstrated below, the Complaint should be dismissed in its entirety and with prejudice, or in the alternative Plaintiff's class allegations should be stricken, for several reasons.  **First**, the Court should dismiss for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6), as Plaintiff fails to sufficiently allege claims under the TCPA and ITSA or any facts sufficient to support them.  To begin, while Plaintiff does not make clear whether he seeks to hold CHW directly or vicariously liable under the TCPA, he fails to plead sufficient facts showing CHW: (a) actually made the purported pre-recorded calls at issue; (b) had any agency relationship with the third parties who allegedly did; or (c) did not honor his "do not call" request.  Further, while Plaintiff alleges CHW is liable under the ITSA only to the extent the callers did not seek his consent to be solicited at the outset of the calls, he pleads zero facts to support that claim, and does not allege to have suffered any damages or otherwise state an ITSA claim.  Thus, the entire Complaint should be dismissed under Rule 12(b)(6).

**Second**, in the alternative, the Court should dismiss the Complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) because Plaintiff cannot meet the requisite elements for Article III standing—namely, causation and redressability.[1]  In this regard, Plaintiff fails to allege any specific facts explaining what conduct is attributable to CHW or how that conduct is traceable to the

---

[1] This Motion addresses the second and third elements of standing.  CHW does not concede, however, that Plaintiff has suffered an injury in fact, and reserves the right to address this issue later.

harm Plaintiff allegedly suffered, if any.  Plaintiff also has not established how injunctive or monetary relief from CHW will redress allegedly injurious conduct caused by unknown third parties.

*Third*, should the Court not dismiss the Complaint in its entirety, it should strike Plaintiff's faulty class allegations under Fed. R. Civ. P. 12(f) and/or 23.  As to his TCPA claims, Plaintiff seeks to represent two *nationwide* classes, even though CHW is indisputably *not an Illinois company*.  But this Court may not, as a matter of law, certify a nationwide class here because it lacks specific personal jurisdiction over CHW for the claims of absent putative class members who do not reside in Illinois and who did not receive calls from CHW in Illinois.  Beyond that, <u>all three</u> of Plaintiff's proposed classes (two TCPA, one ITSA) represent classic "fail safe" classes, which are likewise improper.

## RELEVANT ALLEGATIONS

Despite filing a 48-paragraph Complaint, Plaintiff provides few, if any, specific factual allegations, including who (if anyone) actually called him.  At best, Plaintiff alleges the following:

Starting in November 2016 and continuing through March 2017, Plaintiff received "a series of calls on his residential [phone] line," the number to which is not identified and which Plaintiff alleges was "registered on the national do not call registry" in 2003.  Compl. ¶¶ 15-16.  He alleges that an unspecified number of those calls, "among other calls," included "pre-recorded calls" made by unidentified parties who were purportedly "soliciting him" to purchase CHW "services."  *Id.* ¶¶ 16-17.

Although no exhibits are attached to the Complaint, Plaintiff further alleges that he sent an email to CHW on November 25, 2016, in which he supposedly: (i) informed an unnamed "agent" from CHW about "telemarketing calls" he had purportedly received at some unspecified time "from Choice Home Warranty to his phone" (although he does not indicate to what "phone" he is referring) two days prior; (ii) stated "he never filled out or completed a contact form to be called" by CHW; and (iii) "requested a copy of their do-not-call policy."  *Id.* ¶ 18.  Plaintiff also alleges that a *live* CHW "agent" responded the same day (although *how* is not alleged), who "informed him that his phone number

2

would be removed from their database." *Id.* Plaintiff also alleges he "received another telemarketing call" that same day from a *live* CHW "agent" and, at some point, informed that "agent" "in writing that the calls should stop and that he informed the previous [live] caller for the calls to stop." *Id.*

Plaintiff further alleges that, on November 28, 2016, "he once again emailed Choice Home Warranty providing his phone number and again requesting that the calls stop since he had received yet another call [of some kind] that day." *Id.* ¶ 19. Again, Plaintiff does not indicate whether the "phone number" was his residential line. Plaintiff also alleges that CHW called his "phone number on December 9, 2016 from 732-374-3401 and on December 13, 2016 from 732-898-3609 using a pre-recorded solicitation" of some sort, again not specifying which "phone number" was called. *Id.* ¶ 21.

Next, Plaintiff alleges that he received a call on December 14, 2016 (again without alleging whether it was on his residential line) from some unidentified *live* "agent" who supposedly "claimed that Plaintiff … had visited the Choice Home Warranty website and inquired about a home warranty." *Id.* ¶ 22. Finally, Plaintiff alleges that he received more "unsolicited calls from Choice Home Warranty" through March 2017, but provides no detail about these additional calls at all. *Id.* ¶ 23.

The foregoing represents the sum total of Plaintiff's "factual" allegations specific to Plaintiff. What remains is a laundry list of disjointed and conclusory assertions lacking any supporting facts. For example, Plaintiff alleges that CHW makes "repeated pre-recorded voice calls to consumers' residential landline telephones—including numbers that appear on the National Do Not Call Registry—without prior express *written* consent…." *Id.* ¶ 7 (emphasis added).[2] He further asserts CHW called consumers who have no "established business relationship" with CHW and that "even when consumers try to opt out of future calls . . . [CHW] continues to call them more than thirty (30)

---

[2] Notably, the provision Plaintiff invokes only requires "prior express consent" of the called party, not written consent. *See* 47 U.S.C. § 227(b)(1)(B). *See also id.* ¶ 9 (CHW "failed to obtain prior express consent"); *id.* ¶ 12 ("Defendant knowingly made (and continues to make) telemarketing calls to residential telephones without the prior express consent of the call recipients . . . [and] intentionally and repeatedly violated the TCPA.").

days after requesting stop." *Id.* ¶¶ 10-11. He also concludes that, "[b]y making the telephone calls at issue in th[e] Complaint, [CHW] caused Plaintiff and the members of the Classes actual harm and cognizable legal injury" of some kind. *Id.* ¶ 13. Though providing *no* detail about *any* calls, Plaintiff claims the callers did not seek his consent to be solicited at the outset of the call, as required by the ITSA. *Id.* ¶ 47. He also seemingly concludes CHW's "do-not-call" (or "DNC") policy *must not exist* because *he* was not provided with a copy after requests made to unidentified "agents." *Id.* ¶¶ 18, 42.

Yet, Plaintiff noticeably does <u>not</u> allege, *inter alia*: (i) any details about the substance of the only two "pre-recorded" calls he claims to have received from CHW in December 2016; (ii) any bases for concluding that those two or any other calls were in fact "pre-recorded" or why he believes they were initiated by CHW; (iii) what "services" Plaintiff was encouraged to buy or why he believes they were CHW's services; (iv) that any of the persons (live or "pre-recorded") with whom Plaintiff spoke ever identified themselves as being an employee of CHW; (v) any specific facts otherwise connecting the unnamed "agents" mentioned to CHW; (vi) any basis for concluding that he actually made a DNC request to CHW as opposed to a third party "agent" or that it was actually CHW who allegedly failed to honor it; or (vii) that he incurred *any* economic or other damages as a result of the alleged calls.

Finally, Plaintiff concedes that CHW is *not* an Illinois company and, instead, he pleads that CHW is a New Jersey corporation with its principal office in Edison, New Jersey. *Id.* ¶ 2.

<u>**ARGUMENT**</u>

A. <u>**APPLICABLE LEGAL STANDARDS**</u>

1. **Fed. R. Civ. P. 12(b)(6) – Failure to State a Claim**

Fed. R. Civ. P. 12(b)(6) provides for dismissal where a plaintiff has failed to state a claim upon which relief can be granted. A legal claim mandates the pleading of sufficient facts. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). A "bare assertion" and "conclusory allegations" will not suffice. *Id.* Allegations without such factual enhancements "stop[] short of the line between

4

possibility and plausibility of entitlement to relief." *Id.* (internal quotations omitted).

As the Seventh Circuit has aptly noted, "[i]t is by now well established that a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, might suggest that something has happened to her that might be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010). Thus, a "formulaic recitation of the elements" of a claim fails to meet the requisite pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). The Seventh Circuit has read the holding in "*Iqbal* to be admonishing those plaintiffs who merely parrot the statutory language of the claims that they are pleading . . ., rather than providing some specific facts to ground those legal claims[.] [Such plaintiffs] must do more." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

## 2.    Fed. R. Civ. P. 12(b)(1) – Lack of Standing

Article III of the United States Constitution confers on the federal judiciary the power to adjudicate certain cases and controversies. In order to establish sufficient standing to bring a claim under Article III, (i) a plaintiff must have suffered a concrete and particularized "injury in fact," (ii) there must be a causal connection between the injury and the conduct complained of (*i.e.*, causation), and (iii) the injury must be capable of being redressed by a favorable decision (*i.e.*, redressability). *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). A lack of Article III standing warrants dismissal under Fed. R. Civ. P. 12(b)(1), as the Court lacks proper subject matter jurisdiction over such claims. *See, e.g.*, *Stubenfield v. Chicago Hous. Auth.*, 6 F. Supp. 3d 779, 782 (N.D. Ill. 2013).

## 3.    Fed. R. Civ. P. 12(f) and 23 - Motions to Strike Class Allegations

"Courts generally … favor [motions to strike] that serve to expedite the case by removing any unnecessary clutter." *Mussat v. IQVIA Inc.*, 2018 WL 5311903, at *1 (N.D. Ill. Oct. 26, 2018) (citation omitted). Along those lines, this Court has applied two Federal Rules in deciding motions to strike class allegations at the pleading stage:    First, "[a] court may strike from a pleading an insufficient

defense or any redundant, immaterial, impertinent, or scandalous matter" under Fed. R. Civ. P. 12(f).
*Id.* Thus, this Court has stricken class allegations under Rule 12(f) where, as here, the allegations are
insufficient as a matter of law, "meaning they bear no relation to the controversy or would prejudice the
movant." *Id.* at *2 (quoting *Gress v. Reg'l Transp.Auth.*, 2018 WL 3869962, at *5 (N.D. Ill. Aug. 15,
2018)) (striking nationwide TCPA class). <u>Second</u>, this Court also commonly evaluates motions to
strike class allegations under Fed. R. Civ. P. 23. *See*, *e.g.*, *Buonomo v. Optimum Outcomes, Inc*., 301
F.R.D. 292, 294 (N.D. Ill. Mar. 17, 2014) ("Courts in this [d]istrict [generally] evaluate motions to
strike class allegations under Rule 23, not Rule 12(f).") (citing cases). *But see Zurbriggen v. Twin Hill
Acquisition Co., Inc.*, 338 F. Supp. 3d 875 (N.D. Ill. 2018) (applying <u>both</u> Rule 12(f) and Rule 23).
Under Rule 23, "'courts may strike class allegations at the pleading stage when they are facially and
inherently deficient,' particularly when the dispute is not factual and discovery is unnecessary to
resolve it." *Cowen v. Lenny & Larry's, Inc.*, 2017 WL 4572201, at *4 (N.D. Ill. Oct. 12, 2017)
(quoting *Cholly v. Uptain Group, Inc.*, 2015 WL 9315557, at *3 (N.D. Ill. Dec. 22, 2015)).[3]

## B.    THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6).

As shown below, the Complaint here is devoid of specific facts supporting his TCPA and ITSA
claims and, instead, relies exclusively on threadbare legal conclusions, without supporting facts, which
are insufficient to state a claim.  Thus, the Court should dismiss the Complaint under Rule 12(b)(6).

### 1.    Plaintiff Fails to State a Claim Under the TCPA.

Plaintiff's Complaint does not make clear whether Plaintiff seeks to hold CHW vicariously or
directly liable under the TCPA, or both.[4]  As noted above, Plaintiff pleads conclusory, unsupported

---

[3] *See also Monteferrante v. Williams-Sonoma, Inc*., 241 F. Supp. 3d 264, 268-69 (D. Mass. 2017) (holding
that, while generally disfavored, courts may properly strike class allegations where (as here) "it is obvious from
the pleadings that the proceeding cannot possibly move forward on a class-wide basis," which includes "class
allegations that plainly encompass individuals [*i.e.*, absent class members] **whose claims are barred by
jurisdictional … limitations**") (internal punctuation and citations omitted, emphasis added).

[4] As applied to Plaintiff's first TCPA claim (*see* Comp. ¶¶ 33-38), the TCPA prohibits any person "to initiate

6

allegations that CHW called Plaintiff's residential phone line <u>only twice</u> in December 2016 "using a pre-recorded solicitation." Compl. ¶ 21. The balance of the calls alleged were either <u>live</u> calls or were made by CHW "agents" and other unidentified third parties. *Id.* ¶¶ 16-23. But regardless of which theory of liability Plaintiff asserts here, his TCPA claims fail in several ways:

       a.     *Plaintiff Has Not Plead Any Facts Demonstrating Vicarious Liability.*

To the extent Plaintiff seeks to hold CHW vicariously liable for pre-recorded calls made by third parties, any attempt to do so should be rejected because he has plead <u>zero facts</u> supporting any agency relationship between CHW and any third-party caller, as is required for vicarious liability.

In basic terms, vicarious liability requires a special relationship. *See* Restatement (Third) of Agency § 1.01, cmt. c ("[T]he concept of agency posits a **consensual relationship** in which one person, to one degree or another or respect or another, acts as a representative of or otherwise acts on behalf of another person with power to affect the legal rights and duties of the other person.") (emphasis added); *see also Smith v. State Farm Mut. Auto. Ins. Co.*, 2013 WL 5346430, at *3 (N.D. Ill. Sept. 23, 2013) (applying Restat. § 1.01 to determine agency under the TCPA). Specifically, "[a]gency is the **fiduciary relationship** that arises when one person (a 'principal') **manifests assent** to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the **principal's control**, and the agent manifests assent or otherwise consents so to act." *Smith*, 2013 WL 4346430 at *3 (quoting Restat. § 1.01) (emphasis added). This requires "more than mere passive permission; it involves request, instruction, or command." *Linlor v. Five9, Inc.*, 2017 WL 5885671, at *3 (S.D. Cal. Nov. 29, 2017). "Though 'the precise details of the agency relationship need not be pleaded to survive a motion to dismiss, sufficient facts must be offered to support a reasonable inference that an agency

---

any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(B); 47 C.F.R. §64.1200(3). But only the person who <u>physically</u> places the call to a consumer "initiates" the call within the meaning of the TCPA and can be subject to direct liability. *See, e.g., Donaca v. Dish Network, LLC*, 303 F.R.D. 390, 394-96 (D. Colo. 2014); *Childress v. Liberty Mutual Ins. Co.*, 2018 WL 4684209, at *3 (D.N.M. Sept. 28, 2018).

relationship existed.'" *Meeks v. Buffalo Wild Wings, Inc.*, 2018 WL 1524067, at *5 (N.D. Cal. Mar. 28, 2018) (quoting *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1301 (D. Nev. 2014)).

Further, in the TCPA context, courts have widely recognized that vicarious liability cannot attach without the **"essential ingredient" of control**. *See, e.g., Jones v. Royal Admin. Svcs., Inc.,* 887 F.3d 443, 450 (9th Cir. 2018) (affirming summary judgment ruling where defendant "exercised insufficient control over the manner and means of the work to establish vicarious liability"). This Court has recognized that TCPA vicarious liability claims may be dismissed at the pleading stage. *See, e.g., Smith,* 2013 WL 5346430, at *3-6; *Cunningham v. Health Plan Intermediaries Holdings, LLC*, 2018 WL 835222, at *4-7 (N.D. Ill. Feb. 13, 2018); *Fisher v. Alarm.com Holdings, Inc.*, 2018 WL 5717579, at *3-4 (N.D. Ill. Nov. 1, 2018). And the **majority** of courts have held that failure to allege sufficient facts establishing an agency relationship with or control over an agent is **fatal** to TCPA claims premised on vicarious liability. *See, e.g., Childress,* 2018 WL 4684209, at *3 (a plaintiff "cannot simply allege general control in a vacuum"); *Naiman v. Tranzvia, LLC*, 2017 WL 5992123, at *6-7 (N.D. Cal. Dec. 4, 2017) (dismissing where no facts pled showing defendant had control over third party that made the initial pre-recorded calls); *Reo v. Caribbean Cruise Line, Inc.*, 2016 WL 1109042, at *5 (N.D. Ohio Mar. 18, 2016) (dismissing where "sparse allegations made d[id] not allege any facts that show [defendant] had any power to give interim instructions or otherwise had any control over the performance of" callers); *Panacci v. A1 Solar Power, Inc.*, 2015 WL 3750112, at *7 (N.D. Cal. June 15, 2015) (dismissing where plaintiff did not allege defendant "controlled, authorized, or even knew about [third party's] phone calls or that [defendant] had any control over" the caller and plead "virtually no allegations regarding the relationship" between defendant and the caller).[5] Such is true here.

---

[5] *See also Jones, Linlor, Meeks, supra*; *Helping Hand Caregivers, Ltd. v. Darden Rest's, Inc.*, 900 F.3d 884, 888–90 (7th Cir. 2018); *Keating v. Peterson's Nelnet*, 615 F.App'x 365, 371–75 (6th Cir. 2015); *Kristensen v. Credit Payment Servs. Inc.*, 2015 WL 4477425, at *2–7 (D. Nev. July 20, 2015), *aff'd*, 879 F.3d 1010 (9th Cir. 2018); *Cunningham v. Channer*, 2018 WL 4620391, at *6 (W.D.N.Y. Sept. 26, 2018); *Cunningham v. Sunshine*

In this case, **Plaintiff does not – and indeed cannot – allege the essential ingredient of control.** For example, Plaintiff alleges in conclusory fashion that (i) the calls he received were made to "solicit[] him to purchase [CHW] services" and (ii) he spoke to "an agent" of CHW or some other unspecified third parties on various occasions. Compl. ¶¶ 16, 18, 22. But Plaintiff provides no facts to support these conclusions. To be sure, Plaintiff does <u>not</u> allege that: (i) the purported "pre-recorded" calls he received identified CHW; (ii) the live agents he spoke to identified themselves as being employees of CHW or indicated the calls had been made with CHW's knowledge and authorization; or (iii) what, if any, CHW products or services he was "solicited" to buy or any basis for concluding they were being offered on CHW's behalf. Plaintiff also does <u>not</u> allege CHW was responsible for, participated in, ratified, directed, authorized, or otherwise exercised authority or control over any third party who allegedly called him or that CHW assented to any purported "agent" acting on its behalf. In fact, none of Plaintiff's allegations show **that CHW even knew that any calls were being made by any "agent" in the first instance**, let alone that CHW had any control over those agents for any calls alleged. Thus, to the extent Plaintiff seeks to hold CHW vicariously liable under the TCPA, his claim falls woefully short of satisfying basic federal pleading requirements, and vicarious liability cannot be conjured out of thin air just by using the word "agent." The Court should dismiss those claims.

        *b.*     *Plaintiff Has Not Plead Sufficient Facts Demonstrating Direct Liability.*

Plaintiff likewise fails to allege sufficient facts demonstrating CHW's direct liability under the TCPA for "pre-recorded" calls allegedly made to his residential phone line. As shown above, Plaintiff alleges CHW called his residential phone number "using a pre-recorded solicitation" <u>on two occasions</u>

---

*Consulting Grp.*, 2018 WL 3496538, at *5-6 (M.D. Tenn. Jul. 20, 2018); *Johansen v. HomeAdvisor, Inc.*, 218 F. Supp. 3d 577, 584-589 (S.D. Ohio 2016); *In re Medtronics Int'l Inc.*, 223 F. Supp. 3d 514, 527-529 (N.D. W.Va. 2016); *Salmon v. CRST Expedited, Inc.*, 2016 WL 47876, at *4 (N.D. Okla. Jan. 4, 2016); *Melito v. Am. Eagle Outfitters*, 2015 WL 7736547, at *7 (S.D.N.Y. Nov. 30, 2015); *Murray v. Choice Energy*, 2015 WL 4204398, at *5-6 (S.D. Ohio Jul. 10, 2015); *Jackson v. Caribbean Cruise Line*, 88 F. Supp. 3d 129, 138–39 (E.D.N.Y. 2015); *Freidman v. Massage Envy Franchising, LCC*, 2013 WL 3026641, at *3 (S.D. Cal. June 13, 2013); *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084-85 (C.D. Cal. 2012), *aff'd*, 582 F.App'x 678, 679 (2014).

in December 2016, but he pleads virtually no facts connecting those two calls or any other call—pre-recorded or live—that he allegedly received to CHW beyond unsupported conclusions. *See* discussion at pp. 2-4, 9, *supra*. In fact, he provides no detail whatsoever about the identity of the initial caller(s) or the substance of the alleged pre-recorded message(s) that played at the very beginning of the calls, nor any basis for his conclusion that the calls were indeed "pre-recorded" as opposed to live calls. *Id.*

At bottom, the Complaint suggests Plaintiff eventually spoke with *live* persons who purported to be CHW representatives sometime *after allegedly he received a "pre-recorded" call*, but lacks any details showing that the "pre-recorded" calls actually originated from CHW as opposed to some "agent" or other unidentified third party. Because the Complaint does not allege any facts supporting the contention that CHW actually made the purported "pre-recorded" calls at issue, any claim that CHW is directly liable under the TCPA must also be dismissed. *See, e.g.*, *Johansen v. Vivant, Inc.*, 2012 WL 6590551, at *3 (N.D. Ill. Dec. 18, 2012) (dismissing where "Plaintiff provide[d] no information about the two messages he allegedly received from [Defendant] other than stating that [Defendant] left pre-recorded messages" and "provide[d] only a threadbare, 'formulaic recitation of the elements' of a TCPA cause of action, which is not entitled to an assumption of truth"); *Hanley v. Green Tree Serv., LLC*, 934 F. Supp. 2d 977, 982-83 (N.D. Ill. 2013) (dismissing TCPA claim where, *inter alia*, plaintiff only offered conclusory allegations regarding defendant's use of a pre-recorded voice).[6]

    *c.*  *Plaintiff Has Not Plead Facts Demonstrating a TCPA DNC Rule Violation.*

Plaintiff's other TCPA claim, which alleges a violation of the TCPA's "Do-Not-Call" rules,[7] similarly lacks factual support and, thus, it should be dismissed under Rule 12(b)(6) for the same

---

[6] *See also Childress*, 2018 WL 4684209, at *3 (no direct liability where "there [were] no factual allegations that [d]efendant actually made the [pre-recorded] telephone call at issue"); *Melito*, 2015 WL 7736547, at *4–5 (conclusory allegations that defendant was responsible for sending text messages on behalf of another and merely parroting language from FCC rulings insufficient); *Keating*, 615 F.App'x at 371 (no direct liability where defendant did not send text message, which were sent by third party without defendant's knowledge or consent).

[7] *See* Compl. ¶¶ 23, 42-44 (purportedly invoking 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200).

reasons. As discussed above, Plaintiff pleads no specific facts, and instead merely speculates, as to: (i) who actually made the calls he allegedly received after he made his DNC request or why he believes it was CHW; (ii) who actually received or did not honor Plaintiff's purported DNC request (CHW or some "agent"); (iii) the existence of CHW's DNC policy and whether it was violated, inadvertently or willfully; or (iv) whether or why any call was an unlawful "solicitation" or constituted "telemarketing." *See* discussion at pp. 2-4, 9, *supra*. Such threadbare allegations are insufficient and, thus, Plaintiff's TCPA claim based on purported DNC violations should likewise be dismissed. *See, e.g., Norman v. N. Illinois Gas Co.*, 2014 WL 184774, at *1-3 (N.D. Ill. Jan. 16, 2014) (dismissing DNC violation claim for failure to adequately plead the calls were "solicitations") (**Coleman, J.**); *Wolfkiel v. Intersections Ins. Servs. Inc.*, 303 F.R.D. 287, 291 (N.D. Ill. 2014) (dismissing DNC claim where "allegations d[id] not contain sufficient factual matter to raise [plaintiff's] right to relief above the speculative level") (citing *Twombly* and *Iqbal*); *see also Brooks*, 578 F.3d at 581 (plaintiffs must provide "specific facts").

### 2. Plaintiff Fails to Plead Any Facts Supporting His ITSA Claim.

Plaintiff's ITSA claim is equally unavailing and should be dismissed. Plaintiff alleges that CHW violated the ITSA solely "by placing solicitation calls to their telephones and not inquiring at the beginning of the call whether the person consents to this solicitation." Compl. ¶¶ 46-47 (purportedly invoking 815 ILCS 41**3**/15(b)(2), not 815 ILCS 41**5**/15 as plead). But nowhere in Plaintiff's disjointed and conclusory "factual" recitation does Plaintiff plead any facts suggesting that any of the callers (live or "pre-recorded") failed to make such an inquiry or supporting his conclusion that the calls were "solicitations." ITSA also only prohibits solicitation calls during the hours *between 9 p.m. and 8 a.m.* 815 ILCS 413/15(a). Plaintiff does not provide any call times and, thus, has not plead any violation. Moreover, while "any customer injured by a violation of [the ITSA] may bring an action for the recovery of damages" under ITSA, *id.* § 413/25(d), Plaintiff does not allege he suffered any damages.

Illinois courts have held that "as a general rule, damages may not be predicated on mere speculation, hypothesis, conjecture or whim." *Giammanco v. Giammanco*, 253 Ill. App. 3d 750, 765 (2d Dist. 1993) (citing *De Koven Drug Co. v. First Nat'l Bank*, 27 Ill. App. 3d 798 (1st Dist. 1975)). Such is true here.

## C.  ALTERNATIVELY, PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(B)(1) BECAUSE PLAINTIFF LACKS ARTICLE III STANDING.

As an alternative to dismissal under Rule 12(b)(6), the Court should also dismiss the Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(1) for lack of Article III standing because Plaintiff fails to plead sufficient facts demonstrating either causation or redressability.

Causation for Article III standing purposes requires that the "injury in fact" be "fairly traceable" to the defendant's conduct. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014). As discussed above, Plaintiff fails to plead *any* injury, let alone sufficient facts showing: (i) any conduct directly or indirectly attributable to CHW; (ii) any basis for concluding that the party who called him was CHW's "agent" soliciting him to purchase CHW "services" "using a pre-recorded solicitation"; (iii) what "services" the "agent" third party sought to solicit and whether they were indeed CHW's "services"; (iv) that there is any relationship between CHW and any third party who called him; or (v) what control, if any, CHW had over those third parties. Plaintiff does not even allege basic facts about the content of the calls. *See* discussion at pp. 2-4, 9, *supra*. Because Plaintiff fails to allege any facts by which one could trace his purported injury to CHW, he lacks Article III standing.

Plaintiff also has not shown that his claims can be redressed by CHW. In addition to statutory damages under the TCPA and actual damages under the ITSA, Plaintiff seeks "[a]n injunction requiring Defendant to cease all unsolicited telephone calling activities to residential telephone consumers using pre-recorded voice technology" among other injunctive relief. Compl. ¶ 14. Because Plaintiff pleads no facts showing any conduct attributable to CHW, his injury is not capable of being redressed. Enjoining CHW cannot prevent unidentified third parties from calling him or any other

members of the putative class, and imposing statutory or other damages on CHW will not prevent the purported unlawful conduct of any "agent" of CHW who allegedly placed unsolicited calls to Plaintiff or others. Thus, Plaintiff lacks Article III standing and the Court should dismiss under Rule 12(b)(1).

**D.** **ALTERNATIVELY, THE COURT SHOULD STRIKE PLAINTIFF'S FAULTY CLASS ALLEGATIONS UNDER RULE 12(F) AND/OR 23.**

Should the Court not dismiss the Complaint in its entirety, it should strike Plaintiff's faulty class allegations under Rule 12(f) and/or Rule 23. Here, Plaintiff proposes two classes for his TCPA claims on behalf of "[a]ll persons in the United States" and one Illinois resident only class for his ITSA claim. *See* Compl. ¶ 25. As shown below, these allegations should be stricken for at least two independent, but equally important, reasons: (1) the Court lacks personal jurisdiction over CHW as to the TCPA claims of nonresident class members, and (2) they are impermissible "fail safe" allegations.

In *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017), the Supreme Court held that courts may not exercise specific personal jurisdiction[8] over a nonresident defendant for claims brought by a nonresident plaintiff unless there is a sufficient connection between the defendant's contacts with the forum state and the nonresident plaintiffs' claims. The Court made clear that, to satisfy due process, there must be a connection between "the forum and the specific claims at issue," and where "[t]he relevant plaintiffs are not residents" of the state in which the action is brought "and do not claim to have suffered harm in that State," there can be no specific personal jurisdiction over their claims because "the conduct giving rise to the nonresidents' claims occurred elsewhere." *Id.* at 1782.

*Bristol-Myers*, as applied here, makes clear that Plaintiff cannot represent a nationwide TCPA class in this case. Although *Bristol-Myers* involved a mass tort action, this Court has uniformly

---

[8] Plaintiff does not allege CHW is subject to <u>general</u> personal jurisdiction because, as he admits, it was not incorporated and does not have its principal place of business in Illinois (Compl. ¶ 2); thus CHW cannot be fairly regarded as "at home" in Illinois, as required for general jurisdiction. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011); *Daimler AG v. Bauman*, 571 U.S. 117, 137, 139 & n.19 (2014). To show <u>specific</u> personal jurisdiction per *Bristol-Myers*, "'the *suit*' must 'aris[e] out of or relat[e] to the defendant's contacts with the forum.'" 137 S. Ct. at 1780 (quoting *Daimler*, 571 U.S. at 127) (emphasis in original).

concluded that it applies with equal force in putative class actions. *See, e.g.*, *Muir v. Nature's Bounty*, 2018 WL 3647115, at \*3-5 (N.D. Ill. Aug. 1, 2018).[9]  The Court has also routinely followed *Bristol-Myers* to strike proposed nationwide class allegations, particularly in the TCPA context, with respect to nonresident class members.  *See, e.g., IQVIA*, 2018 WL 5311903, at \*5; *America's Health and Resource Ctr., Ltd. v. Promologics, Inc.*, 2018 WL 3474444, at \*1-4 (N.D. Ill. Jul. 19, 2018); *Practice Mgmt. Support Services, Inc. v. Cirque du Soleil, Inc.*, 301 F. Supp. 3d 840, 864 (N.D. Ill. 2018).

The due process concerns addressed in *Bristol-Myers* and its progeny are equally present in this case with respect to Plaintiff's proposed TCPA classes.  Plaintiff seeks to represent classes of "all persons in the United States" who received a "pre-recorded" call from CHW and/or who are on the national DNC registry and received a call after making a DNC request.  Compl. ¶ 25.  But these overbroad classes pertain to the alleged acts of an *indisputably out-of-state Defendant* (CHW) and the harms of out-of-state residents with phone numbers and physical locations *entirely outside of Illinois*.

Indeed, the Complaint does not allege that any of the nonresident putative class members received calls outside of their respective states of residence, or that the alleged pre-recorded calls originated in Illinois.  Because the Complaint is utterly devoid of allegations showing any connection between CHW and the claims of the absent nonresident putative class members, this Court's exercise of specific personal jurisdiction over CHW for Plaintiff's TCPA claims brought on behalf of nonresidents would not only violate CHW's due process rights but also would needlessly subject CHW to expensive discovery, and potentially to copious motion practice, related to claims devoid of jurisdictional grounds.  Thus, under the applicable authority discussed above, this Court cannot entertain claims of nonresident class members who cannot show that their claims arise from CHW's

---

[9] *See also Chavez v. Church & Dwight Co.*, 2018 WL 2238191, at \*10 (N.D. Ill. May 16, 2018); *Anderson v. Logitech, Inc.*, 2018 WL 1184729, at \*1 (N.D. Ill. Mar. 7, 2018);  *DeBernardis v. NBTY, Inc.*, 2018 WL 461228, at \*2 (N.D. Ill. Jan. 18, 2018);  *Greene v. Mizuho Bank, Ltd.*, 289 F. Supp. 3d 870, 874 (N.D. Ill. 2017); *McDonnell v. Nature's Way Products, LLC* 2017 WL 4864910, at \*4 (N.D. Ill. Oct. 26, 2017).

Illinois contacts, thereby making certification of a nationwide TCPA class <u>impossible</u>. Accordingly, Plaintiff's nationwide TCPA class allegations should be stricken under Rules 12(f) and/or 23.

Plaintiff's class allegations should be also stricken because they are impermissibly "fail-safe." *See*, *e.g.*, *Mullins v. Direct Digital*, *LLC*, 795 F.3d 654, 660 (7th Cir. 2015) ("[C]lasses that are defined in terms of success on the merits—so-called 'fail-safe classes'—[] are not properly defined."); *McCaster v. Darden Rest., Inc.,* 845 F.3d 794, 799 (7th Cir. 2017) ("A fail-safe class is impermissible because 'a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment.'"). Here, <u>all</u> of Plaintiff's proposed classes, as framed, would require the Court to make legal determinations regarding whether class members received unlawful "prerecorded voice message[s]," gave proper "consent," and/or received unlawful "solicitation[s]," among others, which clearly go to the merits of the underlying claims. Compl. ¶¶ 25, 28. Consequently, Plaintiff's proposed classes represent classic "fail-safe" classes and, as such, they should be stricken.

## CONCLUSION

For all the reasons above, CHW respectfully requests the Court grant the instant Motion and dismiss the Complaint <u>in its entirety and with prejudice</u> under Fed. R Civ. P. 12(b)(6) and/or 12(b)(1),[10] along with granting all other just and proper relief, including but not limited to striking Plaintiff's class allegations under Fed. R. Civ. P. 12(f) and/or 23 from the Complaint, among other allegations.[11]

---

[10] *See, e.g., Goode v. PennyMac Loan Servs., LLC*, 2014 WL 6461689, at *10 (N.D. Ill. Nov. 18, 2014) ("[D]ismissal of a suit for failure to state a claim *is always with prejudice*.") (quoting *Walker v. Thompson,* 288 F.3d 1005, 1009 (7th Cir. 2002) (emphasis added).

[11] The Complaint also seeks relief that is not recoverable under the TCPA or ITSA. *See, e.g.*, Compl. at p. 13 (seeking an "order requiring Defendant to disgorge any ill-gotten funds acquired as a result of its unlawful telephone calling practices"). It also contains allegations about "complaints" by non-parties. *Id.* ¶ 8. These allegations are also improper and should be stricken. *See, e.g., Haley v. Westfreight Sys., Inc.*, 2016 WL 5394389, at *1-2 (S.D. Ill. Sept. 27, 2016) (striking prayers for relief under Rule 12(f) where relief sought not recoverable as a matter of law) (citing, *inter alia, Delta Consulting Grp., Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1142 (7th Cir. 2009)); Fed. R. Civ. P. 12(f) (the court may strike any "immaterial, impertinent, or scandalous matter").

Dated: January 7, 2019          Respectfully submitted,


By: /s/ A. Paul Heeringa

    A. Paul Heeringa
    MANATT, PHELPS & PHILLIPS, LLP
    151 N. Franklin, Suite 2600
    Chicago, IL 60606
    Telephone: (312) 529-6308
    Email: pheeringa@manatt.com

    *Attorneys for Defendant CHW Group, Inc.*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on January 7, 2019, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's electronic docket.

<u>/s/ *A. Paul Heeringa*</u>
A. Paul Heeringa
