**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **GEORGE MOORE**, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No. 1:18-cv-06960 |
| v. | Hon. Sharon Johnson Coleman |
| **CHW GROUP, INC.**, d/b/a Choice Home Warranty, a New Jersey corporation | |
| Defendant. | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS AND/OR TO STRIKE CLASS ALLEGATIONS (Dkt. 16)**

In an effort to market its home warranty products, Defendant CHW Group, Inc. ("Defendant" or "CHW") places telephone calls to consumers nationwide without the consumers' prior express consent. The case is straightforward: Plaintiff George Moore ("Plaintiff" or "Moore") alleges that CHW uses a pre-recorded voice message to market its products without first obtaining prior express written consent. Additionally, Moore alleges that CHW repeatedly calls persons whose number is listed on the federal Do Not Call Registry ("DNCR") after those persons told CHW to stop calling. Both violations subject CHW to statutory damages under the TCPA, which Congress set at $500 per call (to be trebled if willfulness is shown). Moore further alleges that CHW violated the Illinois Telephone Solicitations Act by failing to inquire at the beginning of the calls that it places whether the called party consents to the telephone solicitation.

Yet rather than acknowledge its unlawful conduct—let alone take steps to stop its harassing calls—CHW seeks dismissal on the pleadings, asserting that: (1) Plaintiff hasn't pleaded sufficient facts regarding the calls he received and his efforts to have the calls stop, (2)

1

the Complaint fails to sufficiently allege an agency relationship between CHW and any third-party that may have placed the calls at issue, and (3) that Plaintiff fails to satisfy the causation and redressability elements of Article III standing. Defendant further seeks to strike Plaintiff's class allegations.

Fortunately for the hundreds (and perhaps thousands) of consumers nationwide who've been bombarded by CHW's calls, Defendant's Motion to Dismiss and to Strike lacks merit and should be denied. The Complaint sets forth sufficient facts to show that CHW or its agent used a pre-recorded voice, that Plaintiff provided no prior express consent to receive the calls, and that Moore received multiple additional calls despite requesting that CHW stop calling him. As such, Moore details facts to satisfy the elements of his TCPA claim to avoid dismissal on the pleadings.

Furthermore, and while much is unknown at this stage of the case about the precise relationship between CHW and any third-party that may be responsible for placing any of the calls, the Complaint provides detailed facts regarding CHW's involvement in the phone calls so that it may be held liable under an agency theory for any calls that a third-party placed on its behalf. Moreover, courts throughout the country have found standing in similar TCPA cases and striking the class allegations is both premature and unwarranted.

Accordingly, and as explained more fully below, the Court should deny Defendant's Motion to Dismiss and to Strike and allow the case to proceed past the pleadings stage.

## II.    STATEMENT OF FACTS

CHW is a corporation headquartered in Edison, New Jersey that offers home appliance service contracts that purport to protect homeowners against high repair and replacement costs. (Compl. ¶¶ 1, 6.)

2

On July 6, 2003, Plaintiff Moore registered his residential phone number on the national

do not call registry to avoid unsolicited telemarketing calls to that number. (Compl. ¶ 15.)

Starting in November 2016, Plaintiff Moore received a series of calls on his residential line,

including pre-recorded calls, soliciting him to purchase Choice Home Warranty services. (*Id.* ¶

16.) This includes the receipt of calls on November 14, 2016 (multiple times), November 23,

2016 (multiple times), November 25, 2016, November 28, 2016, December 2, 2016, December

8, 2016, December 9, 2016, December 13, 2016, December 14, 2016, January 23, 2017, March

9, 2017, and March 10, 2017. (*Id.* ¶ 17.)

On November 25, 2016, Plaintiff Moore emailed Choice Home Warranty with the title

"TCPA Violations" and informed Choice Home Warranty about 4 telemarketing calls he had

received on November 23, 2016 from Choice Home Warranty to his phone, which is registered

on the DNC. (Compl. ¶ 18.) In that email, Moore states that he never filled out or completed any

contact form to be called by Choice Home Warranty and would have no use for such a service.

(*Id.*) An agent from Choice Home Warranty responded to Plaintiff Moore that day and informed

him that his phone number would be removed from their database. (*Id.*)  Despite this, later that

day, Moore received another telemarketing call from Choice Home Warranty and again informed

the Choice Home Warranty agent in writing that the calls should stop and that he informed the

previous caller for the calls to stop. (*Id.*)

On November 28, 2016, Plaintiff Moore once again emailed Choice Home Warranty

providing his phone number and again requesting that the calls stop since he had received yet

another call that day—CHW never responded to this request. (Compl. ¶ 19.) Despite these

written requests for the calls to stop, Plaintiff Moore continued to receive unsolicited calls from

Choice Home Warranty. Defendant Choice Home Warranty called Plaintiff Moore's phone

number on December 9, 2016 from 732-374-3401 and on December 13, 2016 from 732-898-3609 using a pre-recorded solicitation. (*Id.* ¶ 21.)

On December 14, 2016, Moore received another call and, upon answering, he asked the agent how Defendant had obtained his phone number. (Compl. ¶ 22.) On that call, Plaintiff Moore made it clear that he had never visited Defendant's website and asked the agent to provide him the date that he supposedly went on the website—instead of providing Plaintiff with this information, the agent hung up the call. (*Id.*) In light of that exchange, Plaintiff Moore continued to receive unsolicited calls from Choice Home Warranty through December 2016 as well as January and March of 2017. (*Id.* ¶ 23.) Further, CHW did not inquire at the beginning of the calls whether Moore consented to the solicitations. (*Id.* ¶ 47.)

As explained below, and notwithstanding CHW's strident assertions to the contrary, these facts state a claim against CHW for violating the TCPA and for Plaintiff's class claims to proceed to discovery, and the Court should refuse to allow CHW to escape liability on the pleadings.

## III.    ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moore plainly does so here.

### A.    Moore Plainly States A Claim Under The TCPA.

Defendant's first attack is that "Plaintiff's Complaint does not make clear whether Plaintiff seeks to hold CHW vicariously or directly liable under the TCPA, or both." (Dkt. 17 at 6.) Plaintiff plainly alleges that "Defendant Choice Home Warranty called Plaintiff Moore's phone number on December 9, 2016 from 732-374-3401 and on December 13, 2016 from 732-

898-3609 using a pre-recorded solicitation". (Compl. ¶ 21.) Plaintiff further sets forth detailed allegations about his efforts to contact CHW directly and have the calls stop. (*Id.* ¶¶ 17-23.) Thus, Plaintiff *does* set forth sufficient allegations that CHW itself placed pre-recorded solicitations to him and continued to call him after he requested that the calls stop. However, should it be borne out in discovery that a third-party actually placed the calls at issue, CHW may still be held liable for such calls.

"The FCC has explained that vicarious liability [in the context of the TCPA] may be predicated upon federal common law agency principles." *Shamblin v. Obama for Am.*, No. 8:13-CV-2428-T-33TBM, 2015 WL 1754628, at *6 (M.D. Fla. Apr. 17, 2015) (*citing In re Dish Network*, 28 FCC Rcd. 6582–83 ¶¶ 24–26). Indeed:

> Such principles include classical agency (where a principal manifests assent that an agent shall act on the principal's behalf and subject to the principal's control); apparent authority (where the principal is accountable for the results of a third-party's belief about the actor's authority to act as an agent when the belief is reasonable and traceable to a manifestation of the principal); and ratification (when a principal knowingly accepts the benefits of the actor's conduct). *Id.* at 6586–87.

*Shamblin*, No. 8:13-CV-2428-T-33TBM, 2015 WL 1754628, at *6; *see also Toney v. Quality Res., Inc.*, No. 13 CV 42, 2014 WL 6757978, at *10 (N.D. Ill. Dec. 1, 2014) (explaining that principals may have vicarious liability for TCPA violations "under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification"). "Apparent authority arises in those situations where the principal causes persons with whom the agent deals to reasonably believe that the agent has authority' despite the absence of an actual agency relationship." *American Tel. and Tel. Co. v. Winback and Conserve Program, Inc.* 42 F.3d 1421, 1439 (3d Cir. 1994) (*citing Barticheck v. Fidelity Union Bank/First Nat'l State*, 680 F.Supp. 144, 148-149 (D.N.J. 1988)); *see also Automated Salvage Transport,*

*Inc. v. NV Koninklijke KNP BT*, 106 F.Supp.2d 606, 617 (D.N.J. 1999) (explaining apparent authority).

The FCC has rejected the idea that consumers need to show, in their initial pleadings, that a seller is vicariously liable for offending calls. *See In re Dish Network*, 28 FCC Rcd. at 6584 ¶ 28 ("In the case of either actions to enforce section 227(b) or actions to enforce do-not-call restrictions under section 227(c), ***we stress that nothing in this order requires a consumer to provide proof – at the time it files its complaint – that the seller should be held vicariously liable for the offending call.***") (Emphasis added).

As such, the Court can (and should) deny CHW's Motion to the extent it is premised on the notion that vicarious liability under the TCPA is unavailable as a matter of law. Further, the Court should find that the Complaint sets forth sufficient facts to show that any third-party placing the calls acted as CHW's agent here.

Agency is a "relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01 (2006). "An essential element of agency is the principal's right to control the agent's actions." *Id*, cmt. f(1) (2006). In particular, "[t]he power to give interim instructions distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents." *Toney*, No. 13 CV 42, 2014 WL 6757978, at *10.

The precise nature and extent of the relationship between CHW and any third-party that may have made the calls to Moore is unclear at this time. But it is entirely plausible—and likely—that CHW retains the ability to oversee and control the third-parties activities with

6

respect to placing calls on CHW's behalf. Discovery is needed to uncover the extent of CHW's control and management over the calls a third-party may have made. For now, Plaintiff pleads more than enough facts and allegations to survive a motion to dismiss.

As such, Plaintiff alleges that CHW itself placed the calls at issue and even if a third-party was in fact responsible actual authority is alleged, and the Court should deny the Motion to Dismiss.

### B.    Moore Sufficiently Pleads His ITSA Claim.

Defendant next attacks Plaintiff's Illinois Telephone Solicitations Act ("ITSA") claim by arguing that Plaintiff fails to allege sufficient facts, that the ITSA only governs calls placed between 9 p.m. and 8 a.m., and that Plaintiff hasn't pleaded that he suffered damages. These attacks fall apart.

The ITSA provides, in part, that:

(a) No person shall solicit the sale of goods or services in this State by placing a telephone call during the hours between 9 p.m. and 8 a.m.
(b) A live operator soliciting the sale of goods or services shall:
(1) immediately state his or her name, the name of the business or organization being represented, and the purpose of the call; and
(2) inquire at the beginning of the call whether the person called consents to the solicitation; and
(3) if the person called requests to be taken off the contact list of the business or organization, the operator must refrain from calling that person again and take all steps necessary to have that person's name and telephone number removed from the contact records of the business or organization so that the person will not be contacted again by the business or organization. Compliance with Section 310.4(b) of the Federal Trade Commission's Telemarketing Sales Rule shall constitute compliance with this subsection (b)(3) of this Section.

815 Ill. Comp. Stat. Ann. 413/15. The ITSA defines "telephone solicitation to mean "any communication through the use of a telephone by live operators for soliciting the sale of goods or services." *Id.* at 413/5.

Plaintiff plainly alleges that "Defendant violated this provision with respect to Moore and all members of the Illinois-Only Class by placing solicitation calls to their telephones and not inquiring at the beginning of the call whether the person consents to the solicitation." (Compl. ¶ 47.) Plaintiff further alleges throughout his complaint that the calls at issue were made with the purpose of soliciting CHW's services. (*See, e.g.*, *Id.* ¶ 16.) Nothing else is required to state a claim under the ITSA.

Moreover, despite CHW's argument to the contrary, Plaintiff alleges that he suffered damages. That is, Plaintiff alleges that "[b]y making the telephone calls at issue in this Complaint, Defendant caused Plaintiff and the members of the Classes actual harm and cognizable legal injury. This includes the aggravation, nuisance, and invasions of privacy that result from the receipt of such calls. Furthermore, the calls intentionally interfered with Plaintiff and the other Class members use and enjoyment of their telephones, including the related data, software, hardware components and ability to temporarily use their property." (Compl. ¶ 13.) Additionally, Plaintiff's second Prayer for Relief is for "an award of actual . . . damages." (Compl., Prayer for Relief ¶ 2.) Thus, it is simply inaccurate to suggest that Plaintiff hasn't pleaded damages.

Finally, though CHW argues that the ITSA only governs calls placed between 9 p.m. and 8 a.m., this is an incorrect reading of the statute. Placing calls between those hours is a separate violation of the statute from the violations at issue here, which center on the failure to inquire at the beginning of the call whether the recipient of the call consents to the solicitation. *See* 815 Ill. Comp. Stat. Ann. 413/15. Thus, while it violates section (a) of the ITSA to place solicitation calls between 9 p.m. and 8 a.m., the plain language shows that the time-of-day violation is a separate violation from the section (b)(2) requirement that the caller inquire about consent at the

beginning of the call—nothing in section (b)(2) indicates that the rule only applies to calls placed at hours deemed impermissible by section (a).

For these reasons, Defendant's Motion to Dismiss should be denied.

### C. Moore Plainly Enjoys Standing.

Recycling arguments from its Rule 12(b)(6) motion to dismiss, CHW argues in the alternative that the case should be dismissed pursuant to Rule 12(b)(1) for lack of Article III standing because, according only to CHW, Plaintiff supposedly fails to plead sufficient facts demonstrating causation or redressability. (Dkt. 17 at 12-13.) CHW misses the mark.

It is well-established that the "irreducible constitutional minimum" of standing consists of three elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). First, the plaintiff must have suffered an injury in fact; which is concrete and particularized; and is actual or imminent. *Id.* Second, the plaintiff's injury must be fairly traceable to the challenged action. *Id.* Third, it must be likely that the injury will be redressed by a favorable decision. *Id.* at 561. CHW challenges the second and third elements.

Another district court faced with similar arguments in a TCPA case swiftly rejected them.

Finally, the Court notes that Universal argues, in passing, that Ung's alleged injuries are neither fairly traceable to its conduct nor redressable by a favorable decision, two additional requirements for Article III standing. The Court has little trouble rejecting these arguments. In order to show traceability, Ung must show only that Universal's calls were the source of his harm. *E.g., Charvat v. Mutual First Fed. Credit Union*, 725 F.3d 819, 824 (8th Cir.2013) ("Traceability requires proof of causation, showing the injury resulted from the actions of the defendant and not ... [from] the independent action of some third party not before the court.") (internal quotation marks and citation omitted). It is readily apparent that the *only* harm alleged in this case resulted from Universal's conduct, and not from the actions of any third parties. As for redressability, the fact the TCPA provides for statutory damages belies Universal's argument that Ung's injuries are not redressable here. *E.g., Cuellar–Aguilar v. Deggeller Attractions, Inc.*, 812 F.3d 614, 621 (8th Cir.2015) (noting the Eighth Circuit had repeatedly held that "the availability of statutory damages show[s] that the plaintiffs' injury [is] redressable").

*Ung v. Universal Acceptance Corp.*, 198 F. Supp. 3d 1036, 1040 (D. Minn. 2016).

As explained above, Plaintiff plainly alleges that CHW itself "called Plaintiff Moore's phone number on December 9, 2016 from 732-374-3401 and on December 13, 2016 from 732-898-3609 using a pre-recorded solicitation." (Compl. ¶ 21.) Plaintiff further sets forth detailed allegations about his efforts to contact CHW directly and have the calls stop. (*Id.* ¶¶ 17-23.) Finally, Plaintiff alleges that CHW itself violated the ITSA "with respect to Moore and all members of the Illinois-Only Class by placing solicitation calls to their telephones and not inquiring at the beginning of the call whether the person consents to the solicitation." (*Id.* ¶ 47.) Thus, Plaintiff easily satisfies the Article III requirement that the alleged injury be traceable to the defendant's conduct.

Similarly, Plaintiff's alleged injuries are easily redressable. As the court in *Ung* found, "the fact the TCPA provides for statutory damages belies Universal's argument that Ung's injuries are not redressable here." *Ung*, 198 F. Supp. 3d at 1040. Plaintiff seeks statutory damages under the TCPA, actual damages plus costs and attorney fees under the ITSA, and applicable injunctive relief. His alleged injury is therefore redressable.

Defendant's alternative motion to dismiss pursuant to Rule 12(b)(1) should be denied.

**D.      CHW's Alternative Motion to Strike Should Be Denied—The Court Has Personal Jurisdiction Over CHW As To The TCPA Claims of Nonresident Class Members And The Pleaded Classes Are Not Fail Safe Classes**

Finally, CHW argues that Plaintiff's class allegations should be stricken on the pleadings because the Court supposedly lacks jurisdiction over CHW for the claims of class members who do not reside in Illinois and because Plaintiff's pleaded classes are supposedly "fail safe" classes. Both arguments fail.

**1.      *Bristol-Myers* does not strip this court of jurisdiction over the claims of Non-Illinois residents.**

10

This Court has specific personal jurisdiction over CHW for all class members' claims because it has specific personal jurisdiction over CHW for Moore's claims despite CHW's arguments to the contrary. That is, CHW argues that the Supreme Court's holding in *Bristol-Myers* means the Court should strike the Class allegations containing claims for non-Illinois residents. (Dkt. 17 at 13-15.) However, the personal jurisdiction rule relating to non-resident plaintiffs discussed in *Bristol-Myers*, a mass-tort action originally filed in California state court that named both resident and non-resident plaintiffs, does not apply in the class action context.[1]

This is because "[i]n a mass tort action, like the one in *Bristol-Myers*, each plaintiff is a real party in interest to the complaints, meaning that they were named as plaintiffs in the complaints. By contrast, in a putative class action, one or more plaintiffs seek to represent the rest of the similarly situated plaintiffs, and the 'named plaintiffs' are the only plaintiffs actually named in the complaint." *Tickling Keys, Inc. v. Transam. Fin. Advisors, Inc.*, 305 F. Supp. 3d 1342 (M.D. Fla. Apr. 3, 2018). Unlike the state court mass tort plaintiffs in *Bristol-Myers*, "the party seeking to maintain a class action [in federal court] must satisfy the due process safeguards contained in Federal Rule of Civil Procedure 23." *Feldman v. BRP United States, Inc.*, 2018 U.S. Dist. LEXIS 53298, at *15 (S.D. Fla. Mar. 28, 2018). Accordingly, in a federal court class action "courts are concerned only with the jurisdictional obligations of the named plaintiffs." *Chernus v. Logitech, Inc.*, 2018 U.S. Dist. LEXIS 70784, at *19-20 (D.N.J. Apr. 27, 2018); *see also Molock v. Whole Foods Mkt., Inc.*, 297 F.Supp.3d 114, 126–27 (D.D.C. 2018) ("These additional

---

[1] Indeed, the Supreme Court in *Bristol-Myers* expressly stated that its "decision concerns the due process limits on the exercise of specific jurisdiction by a State" so "the question remains open whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court."*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1777, 198 L. Ed. 2d 395 (2017)

elements of a class action supply due process safeguards not applicable in the mass tort context. In light of these key distinctions ... the court joins the other courts that have concluded that *Bristol–Myers* does not require a court to assess personal jurisdiction with regard to all non-resident putative class members.").

Applied here, personal jurisdiction over CHW with respect to the pleaded nationwide classes' claims turns on the Court's personal jurisdiction over CHW in connection with Plaintiff's claims. Accordingly, because the Court has jurisdiction over Defendant as to Plaintiff's TCPA claims, the Court also has jurisdiction over Defendant as to the putative classes' TCPA claims.

The Court should therefore deny Defendant's motion to strike non-Illinois residents' claims based on Defendant's personal jurisdiction argument. *See, e.g., Becker v. HBN Media, Inc.*, 314 F. Supp. 3d 1342 (S.D. Fla. June 6, 2018) ("*Bristol-Myers* does not apply to class actions"); *see also Chernus*, 2018 U.S. Dist. LEXIS 70784 (D.N.J. Apr. 27, 2018) ("courts are concerned only with the jurisdictional obligations of the named plaintiffs"); *see also Tickling Keys*, 2018 U.S. Dist. LEXIS 79578, (M.D. Fla. April 4, 2018) ("the Court declines to extend Bristol-Myers to the class action context"); *see also In re Morning Song Bird Food Litig.*, 2018 U.S. Dist. LEXIS 44825 (S.D. Cal. Mar. 19, 2018) ("claims of unnamed class members are irrelevant to the question of specific jurisdiction"); *see also Casso's Wellness Store & Gym LLC v. Spectrum Lab Prods., Inc.*, 2018 U.S. Dist. LEXIS 43974 (E.D. La. Mar. 19, 2018) ("material differences between mass tort actions and class actions further support the finding that Bristol-Myers is inapplicable to the instant case, a purported class action invoking federal question subject matter jurisdiction"); *see also Molock v. Whole Foods Market, Inc.*, 2018 U.S. Dist. LEXIS 42582 (D.D.C. Mar. 15, 2018) ("These additional [Rule 23] elements of a class action

supply due process safeguards not applicable in the mass tort context."); *see also Sanchez v. Launch Tech. Workforce Sols., LLC*, 297 F. Supp. 3d 1360 (N.D. Ga. Jan 26, 2018) ("in contrast to a mass action like Bristol-Myers, which may—and likely would—present significant variations in the plaintiffs' claims, the requirements of Rule 23 class certification ensure that the defendant is presented with a unitary, coherent claim to which it need respond only with a unitary, coherent defense"); *see also In re Chinese-Manufactured Dry Wall Prods. Liab. Litig.*, 2017 U.S. Dist. LEXIS 197612 (E.D. La. Nov. 30, 2017) ("a class action has different due process safeguards"); *see also Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 2017 U.S. Dist. LEXIS 155654 (N.D. Cal. Sept. 22, 2017) ("*Bristol-Myers* is meaningfully distinguishable based on that case concerning a mass tort action").

Simply put, the Court has personal jurisdiction over CHW for all members of the pleaded nationwide classes and CHW's Motion should be denied.

### 2. Contrary to CHW's assertions, Moore's class definitions do not constitute "Fail Safe" Classes.

Finally, CHW argues that the classes as defined are somehow fail-safe classes. A "fail-safe" class is "one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim. Such a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Messner v. Northshore University HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012); *see also In re Nexium Antitrust Litig.*, 777 F.3d 9, 22 (1st Cir. 2015) (explaining that a fail safe class is one that "impermissibly determines membership based upon a determination of liability").

First, CHW is incorrect that the pleaded classes are fail-safes classes. Persons could meet the definition of the classes and yet recover nothing at all. Put simply, class membership doesn't

13

equal prevailing in the lawsuit. Indeed, if the Court were to decide that CHW's source of consent was sufficient, then no one in the Prerecorded No Consent Class would have a claim. And in any case, "[a]lleging a fail-safe class in a complaint, however, is not grounds for striking the allegations." *Rysewyk v. Sears Holding Corp.*, No. 15 CV 4519, 2015 WL 9259886, *8 (N.D. Ill. Dec. 18, 2015).

Indeed, objections based on the class definition are plainly premature because "litigants and judges regularly modify class definitions." *Schorsch v. Hewlett-Packard Co*., 417 F.3d 748, 750 (7th Cir. 2005); *see also Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*, 215 F.R.D. 523, 525 (E.D. Tex. 2003) *aff'd*, 100 F. App'x 296 (5th Cir. 2004) (leave to amend definition proper where "the parties filed additional briefing on the class certification issues and Plaintiffs filed a motion to amend the class definition in order to comply with the summary judgment order and the discussions during the class certification hearing."); *Jones v. Nat'l Council of Young Men's Christian Associations of the U.S.*, 09 C 6437, 2012 WL 5356038 (N.D. Ill. Oct. 30, 2012) (Courts "routinely permit modification of the proposed class definition") (citation omitted); *Wolph v. Acer Am. Corp*., 272 F.R.D. 477, 483 (N.D. Cal. 2011) *reconsideration denied*, C 09-01314 JSW, 2012 WL 993531 (N.D. Cal. Mar. 23, 2012); *Mazur v. eBay Inc.,* 257 F.R.D. 563, 568 (N.D. Cal. 2009) (citation omitted).

As such, even if Moore had pleaded fail safe classes (he hasn't) that still doesn't militate in favor of striking the class allegations.

## IV.    CONCLUSION

Each of Defendant's arguments for dismissal and for striking the class allegations falls apart. Plaintiff respectfully requests that the Court deny Defendant's Motion, allow the case to

proceed to discovery, and award such additional relief as the Court deems necessary, reasonable, and just.

GEORGE MOORE, individually and on behalf of all others similarly situated,

Dated: February 12, 2019

By: /s/ Patrick H. Peluso

One of Plaintiff's Attorneys

Steven L. Woodrow
swoodrow@woodrowpeluso.com
Patrick H. Peluso
ppeluso@woodrowpeluso.com
Taylor T. Smith
tsmith@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Ste. 300
Denver, CO 80210
Tel: 720-213-0675
Fax: 303-927-0809

Steven Owen Ross
Soross730@gmail.com
Steven O. Ross, P.C.
1235 South Prairie Avenue, Suite 1503
Chicago, IL 60605
Tel: 312-566-4170

Stefan L. Coleman
law@stefancoleman.com
Law Offices of Stefan Coleman, P.A.
201 S. Biscayne Blvd., 28th Floor
Miami, Florida 33131
Tel: 877-333-9427

*Attorneys for Plaintiff and the Putative Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 12, 2019 I caused the above and foregoing papers to be served on all counsel of record by filing such papers with the Court using the Court's electronic filing system.

/s/ Patrick H. Peluso